1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTIAN DOSCHER,

                     Plaintiff,

    v.

KROGER CO. et al.,

                     Defendants.

CASE NO. 3:21-cv-05255-TL

ORDER OF DISMISSAL

Plaintiff Christian Doscher claims that he was discriminated against for having a disability and that his Constitutional rights were violated when he was trespassed from a Fred Meyer store for refusing to wear a face mask as required by state mandate in December 2020 due to the COVID-19 pandemic. This matter is before the Court on Defendants Kroger Co., Kathryn Hedges, and Daron Maygra's (hereinafter, "Fred Meyer Defendants")[1] Motion to Dismiss, and

---

[1] The Fred Meyer Defendants note that Plaintiff incorrectly asserts that Kroger Co. owns and operates the Fred Meyer store where the relevant incident took place, and they claim that the appropriate party should instead be Fred Meyer Stores, Inc. Dkt. No. 26 at 2 n.1. Plaintiff does not acknowledge this potential mistake in his opposition, but the Fred Meyer Defendants also note that "[f]or the purposes of [their] Motion, Fred Meyer and Kroger respond in kind." *Id.* Because the Court grants the motion and dismisses the case in its entirety, no further action regarding

the Motion to Dismiss and Memorandum in Support on Behalf of Defendants Oran Thompson, Jay Mason, and City of Tumwater ("Tumwater Defendants"). Dkt. Nos. 26, 28. Having considered the relevant record, the Court finds that Plaintiff fails to state a plausible federal claim, GRANTS the two motions to dismiss, and DISMISSES the Amended Complaint.

## I.    BACKGROUND

In December 2020, Mr. Doscher attempted to pay a utility bill, in person, at a local Fred Meyer. Dkt. No. 12 ¶ 5. At the time, the Washington State Governor had declared a state of emergency due to the ongoing COVID-19 pandemic. Proclamation of Governor Jay Inslee, No. 20-05 (Feb. 29, 2020).[2] In response, the Washington State Department of Health ("DOH") issued a state-wide mandate requiring most individuals to wear a mask or other appropriate face covering while in an indoor public space. *See* Order of the Secretary of Health 20-03.1 (July 24, 2020).[3] The DOH order included exemptions from the mask mandate, including for "persons with a medical condition for whom wearing a face covering could obstruct breathing." *Id.* The same day the DOH order was issued, Governor Inslee issued a subsequent proclamation stating "[n]o business may operate, allow a customer to enter a business, or conduct business with a customer inside any building that is open to the public or outdoors in a public place unless the customer is wearing a face covering, as required by Order of the Secretary of Health 20-03.1." Proclamation of Governor Jay Inslee, No. 20-25.7 at 5 (July 24, 2020).[4]

---

naming the appropriate party as Defendant is required. Hereinafter, the Court will refer only to Fred Meyer, as opposed to Kroger.

[2] Available at https://www.governor.wa.gov/sites/default/files/proclamations/20-05%20Coronavirus%20%28final%29.pdf.

[3] Available at https://mrsc.org/getmedia/cc94a9c9-862a-4647-81e0-7de08bb2522e/SHO_20-03_Statewide_Face_Coverings.aspx.

[4] Available at https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-25.7.pdf.

Mr. Doscher alleges that he has a medical condition that qualified for an exemption from the mask mandate per the DOH order. Dkt. No. 12 ¶ 5. As such, Mr. Doscher entered the Fred Meyer store without wearing a mask. *Id*. In response to Proclamation 20-25.7, the Fred Meyer store had implemented a policy requiring all customers to wear masks while in the store. Dkt. No. 26 at 2–3. While Mr. Doscher waited in line at the customer service station, he was informed of the store's mask policy by multiple employees. Dkt. No. 12 ¶¶ 6, 11. Mr. Doscher refused to wear a mask, citing his alleged exemption. *Id*. ¶¶ 7, 10. Based on Mr. Doscher's refusal to wear a mask, one of the Fred Meyer employees who interacted with Mr. Doscher, Defendant Catherine Hedges, called 911 at the direction of her manager Defendant Daron Maygra, who had also interacted with Mr. Doscher, and reported that Mr. Doscher was refusing to wear a mask and was being disorderly. *Id*. ¶¶ 8–16. While waiting for the police to respond, Ms. Hedges began assisting Mr. Doscher with his utility payment. *Id*. ¶ 23. Before Mr. Doscher's utility payment was completed, Defendant Officer Oran Thompson, of the Tumwater Police Department, arrived and informed Ms. Hedges that he could not trespass Mr. Doscher if she continued to assist him. *Id*. ¶ 27. Ms. Hedges then stopped assisting Mr. Doscher. *Id*. ¶ 28. Officer Thompson then confirmed with Mr. Maygra that he still intended for Mr. Doscher to be trespassed from the store. *Id*. ¶¶ 30–31. Officer Thompson then escorted Mr. Doscher from the store and issued a Trespass Warning banning Mr. Doscher from the Fred Meyer store for one year. *Id*. ¶¶ 32–36, 42–47.

## II.      LEGAL STANDARD

When a plaintiff "fails to state a claim upon which relief can be granted," the defendant may move for dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff, the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (cleaned up) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

When a plaintiff is proceeding *pro se*, the complaint must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *E.g., Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 & n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)). Even so, a court should "not supply essential elements of the claim that were not initially pled." *E.g., Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (quotation marks omitted) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)); *see also Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("[C]ourts should not have to serve as advocates for pro se litigants." (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987))).

### III.  DISCUSSION

In his Amended Complaint, Mr. Doscher asserts 16 different causes of action:

- Count 1 – Fred Meyer's violation of Title III of the Americans with Disabilities Act ("ADA");

- Count 2 – Officer Thompson's violation of Title III of the ADA;

- Count 3 – Fred Meyer's violation of the Washington Law Against Discrimination ("WLAD");

- Count 4 – Officer Thompson's violation of the WLAD;

- Count 5 – Officer Thompson's individual liability under 42 U.S.C. § 1983;

- Count 6 – City of Tumwater's liability under 42 U.S.C. § 1983 and *Monell*;

- Count 7 – Hedges' individual liability under 42 U.S.C. § 1983;

- Count 8 – Hedges' violation of the WLAD;

- Count 9 – Maygra's individual liability under 42 U.S.C. § 1983;

- Count 10 – Maygra's violation of the WLAD;

- Count 11 – Fred Meyer's corporate liability under 42 U.S.C. § 1983;

- Count 12 – Fred Meyer's corporate liability under the WLAD;

- Count 13 – Conspiracy to violate 42 U.S.C. § 1983 by all Defendants;

- Count 14 – Fred Meyer's liability under 42 U.S.C. § 1985;

- Count 15 – Officer Thompson's individual liability under 42 U.S.C. 1986;

- Count 16 – City of Tumwater's negligence via *respondeat superior*.

Dkt. No. 12 ¶¶ 66–178. This Order will only address Mr. Doscher's claims under federal law. *See infra* Section III.D.

The Fred Meyer Defendants and the Tumwater Defendants seek to dismiss this case in its entirety, arguing that Mr. Doscher fails to plausibly state a claim for relief under any of the asserted causes of action. Dkt. Nos. 26, 28, 32, 33. Mr. Doscher opposes. Dkt. Nos. 30, 31.

As an initial matter, the Court notes that the Amended Complaint is replete with recitations of the elements of the claims, legal conclusions, and unsupported conclusory statements. The Court need not afford these statements any veracity and can disregard them in

determining whether the Amended Complaint states a claim for relief. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[, and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**A.      Discrimination Claims under Title III of the ADA**

Title III of the ADA generally provides that:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To state a claim for discrimination under Title III, a plaintiff must plausibly assert facts that show: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)). The Parties do not appear to dispute that the Fred Meyer store where the relevant incident occurred is a place of public accommodation, nor that Plaintiff has plausibly asserted facts establishing that he has a qualifying disability under the ADA. Therefore, this issue turns on whether Plaintiff has asserted sufficient facts to show that he was denied accommodations because of his alleged disability.

**1.      Title III Claims against Fred Meyer Defendants**

The crux of Plaintiff's discrimination claim is that Fred Meyer was required by the ADA to accommodate his disability by allowing him to utilize the in-person utility payment services offered to all customers without requiring him to wear a mask. *See, e.g.*, Dkt. No. 30 at 8–9. To establish his discrimination claim on this basis, Plaintiff's asserted facts must plausibly show that

1    "the defendant employed a discriminatory policy or practice . . . [that] (a) fail[ed] to make a

2    requested reasonable modification that was *(b) necessary to accommodate the plaintiff's*

3    *disability*." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017)

4    (emphasis added) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir.

5    2004)).

6           The Fred Meyer Defendants argue that granting Mr. Doscher's requested modification

7    was unnecessary because other accommodations were available that would have allowed him to

8    make his utility payment, such as paying by phone or via the online payment portal. Dkt. No. 26

9    at 7. Additionally, they claim that modifying the policy would have been unreasonable because it

10   would have put them in the position of potentially violating the Governor's mandate in order to

11   provide the accommodation.[5] *Id.* Further, the Fred Meyer Defendants argue that the decision to

12   trespass Mr. Doscher from the store was not due to his disability, but rather his refusal to comply

13   with the mask mandate. *Id.*

14          Mr. Doscher fails to make out a *prima facie* discrimination claim because he does not

15   assert any facts establishing that his requested policy modification was necessary to

16   accommodate his disability. Mr. Doscher does not dispute that alternate payment options were

17   available. And the alternative options of paying by phone or via the online payment portal were

18   two options that would not have raised the public health concerns of entering a store unmasked

19   in the middle of a pandemic. Instead, Mr. Doscher claims that the Fred Meyer Defendants'

20

21   [5] The Court recognizes that the Parties dispute how the somewhat conflicting mandates and guidance provided by
     the different government entities would apply in this case. A significant portion of Mr. Doscher's opposition to the

22   motions to dismiss is devoted to his claim that the exemptions outlined in the DOH order for individuals with
     breathing difficulties should be interpreted as overriding the Governor's mandate that required businesses to strictly

23   enforce the general mask mandate. *See, e.g.*, Dkt. No. 31 at 9–11, 13, 15–18. Neither Party provides controlling or
     persuasive guidance from any state entity or state court interpreting these potentially conflicting regulations, but
     resolving the interpretive conflict is unnecessary to determine whether Mr. Doscher has plausibly stated a *prima*

24   *facie* case for discrimination under Title III of the ADA.

1  argument for dismissal is frivolous because one employee began assisting him to make his

2  payment, despite his being present in the store without a mask, and only stopped because the

3  police arrived to trespass him as requested by the store. Dkt. No. 30 at 7. Mr. Doscher claims that

4  he was never asked by any employee to leave the store prior to the police's arrival (*id.* at 5–6),

5  but his Amended Complaint makes clear that he was told on multiple occasions that masks were

6  required. Dkt. No. 12 ¶¶ 6, 11. Also, Mr. Doscher admits that after he was walked out of the

7  store by Officer Thompson and Mr. Maygra, he then remarked, "Ok, I'm ready to leave." *Id.* at

8  ¶¶ 39–40. The clear inference from this is that up to this point, he was not ready to leave the

9  store (and refused to leave the store). Although the Court must "view the facts in the light most

10  favorable to [Plaintiff], we must also independently review the record as a whole and may accept

11  uncontested facts found therein." *Fortyune*, 364 F.3d at 1083. Only after his implicit refusal to

12  comply with the store's policy that resulted in the call to 911 did Ms. Hedges begin assisting

13  him. This is consistent with the Fred Meyer Defendants' contention that Mr. Doscher was

14  allowed to remain in the store until police arrived simply "because he left them no choice" by

15  continuing to refuse to comply with the store's mask policy. Dkt. No. 33 at 3.

16      The facts Mr. Doscher focuses on would be much more relevant had he been charged

17  with trespass and he were defending against those charges. However, Mr. Doscher has filed a

18  civil suit claiming discrimination under the ADA, and the core inquiry under the ADA is whether

19  the reasonable modification was necessary to accommodate the plaintiff's disability. *Karczewski*,

20  862 F.3d at 1010. The burden of stating a *prima facie* claim of discrimination under Title III is

21  Mr. Doscher's, and there are no plausibly stated facts in Mr. Doscher's Amended Complaint or

22  briefing that indicate that it was *necessary* for Mr. Doscher to make his payment in person at the

23  Fred Meyer store. Fred Meyer was therefore not required to make any modification to their mask

24  policy and was free to revoke Mr. Doscher's license to be on the store premises for failure to

1   comply with its mask policy once the police arrived. The Court therefore GRANTS the motion to

2   dismiss the Title III claims against the Fred Meyer Defendants for failure to state a claim.[6]

3           **2.      Title III Claims Against the Tumwater Defendants**

4           Mr. Doscher concedes that he cannot bring any claims against the Tumwater Defendants

5   under Title III of the ADA. Dkt. No. 31 at 3. The Court therefore GRANTS Tumwater Defendants'

6   motion to dismiss these claims.

7   **B.      Civil Rights Claims Under 42 U.S.C. § 1983**

8           Even construing the concrete factual allegations in the Complaint as liberally as possible

9   (*see Pardus*, 551 U.S. at 94), and taking the allegations as true as the Court must (*Iqbal*, 556 U.S.

10  at 678), the Court finds that Mr. Doscher fails to state a plausible claim for relief under § 1983

11  against any of the Defendants.[7] At its most basic level, a claim for relief under § 1983 requires a

12  plausible allegation that a right afforded by either the Constitution or a federal statute has been

13  violated by a person acting under the color of law. *Williams v. California*, 764 F.3d 1002, 1009

14  (9th Cir. 2014).

15          **1.      Defendants Kroger and the City of Tumwater**

16          To the extent that any of Mr. Doscher's § 1983 claims are based on the alleged violation

17  of his rights under the ADA when he was trespassed from the store (*see* Dkt. No. ¶¶ 146–148),

18  those claims fail as discussed in Section III.A above. This dooms his claim of corporate liability

19  against Kroger. *See supra* Section III.A.1.

20

21  _____

    [6] Defendants point out that the only relief available to Plaintiff under Title III of the ADA is an injunction requiring
    Fred Meyer to modify its mask policy, which is now moot because the statewide mask mandate has been lifted. Dkt.

22  No. 26 at 8; *see also Ervine v. Desert View Regional Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014);
    *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002). Because the Court finds that Plaintiff
    fails to state a claim upon which relief could be granted, it need not address this issue.

23  [7] The Court notes that Mr. Doscher has not raised any claims of individual liability against Officer Mason, but
    instead includes factual allegations against Officer Mason only under his *Monell* claim against Tumwater and his

24  general § 1983 conspiracy claim.

1    With regard to the City of Tumwater, Mr. Doscher's *Monell* claims rest on his allegation

2    that Tumwater maintains a "policy" regarding issuing trespass warnings that violate the ADA,

3    which ultimately resulted in Officer Thompson unlawfully detaining Mr. Doscher. Dkt. No. 12

4    ¶¶ 117–126. Thus, the claim rests entirely on Mr. Doscher asserting a viable ADA claim. Similar

5    to Mr. Doscher's claims against Kroger, his *Monell* claim against Tumwater fail. *See supra*

6    Section III.A.2.[8]

7         **2.    Individual Defendants**

8         Some of Mr. Doscher's claims against the individual defendants also appear to allege a

9    violation of his Fourth Amendment right to be free from an unlawful seizure, or "Terry stop,"

10   that occurred when he was trespassed from the store by Officer Thompson (Dkt. No. 12 ¶¶ 88,

11   127–138, 140–144), but none of Mr. Doscher's plausibly asserted facts support a claim for

12   individual liability under § 1983.

13        **a.    *Individual Liability for Officer Thompson***

14        Mr. Doscher is unable to state a claim against Officer Thompson because Officer

15   Thompson is entitled to qualified immunity. Two questions must be answered when a defendant

16   raises the defense of qualified immunity: (1) whether qualified immunity is categorically

17   available; and (2) if qualified immunity is available generally, whether the individual defendant

18   is entitled to it in the particular case. *Jensen v. Lane Cnty.*, 222 F.3d 570, 576 (9th Cir. 2000)

19   (citing *Richardson v. McKnight*, 521 U.S. 399 (1997)). Mr. Doscher does not appear to argue

20   that Officer Thompson is categorically barred from asserting the qualified immunity defense.

21   The Court therefore address only the second question: whether Officer Thompson is entitled to

22   immunity under the plausibly asserted facts in the Amended Complaint.

23

24   ---
     [8] Plaintiff's attempt to allege a Section 1983 violation based on the WLAD fails because Section 1983 only
     addresses deprivations of rights under the Constitution of federal law. *Williams*, 763 F.3d at 1009.

To determine whether Officer Thompson is entitled to qualified immunity requires a "particularized analysis" of whether he "violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Jensen*, 222 F.3d at 576 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This requires a two-prong inquiry: (1) whether the facts as alleged make out a constitutional violation; and (2) whether the constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A court may address the two prongs of the inquiry in any order. *Pearson*, 555 U.S. at 236.

Mr. Doscher's argument in opposition focuses on whether his right to be free from an unreasonable *Terry* stop was clearly established. Dkt. No. 31 at 3–4. Defendants appear to agree that the scope of the right under the circumstances is clearly established. Dkt. No. 28 at 7. A police officer who reasonably concludes "that criminal activity may be afoot" may "briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Brown*, 996 F.3d 998, 1004 (9th Cir. 2021). For purposes of this motion, the Court will analyze the issue accepting that serving a trespass notice qualifies as a reasonable *Terry* stop, as framed by Defendants. *See* Dkt. No. 28 at 7 (citing *United States v. Harvey*, 1 F.4th 578, 582 (8th Cir. 2021)).[9]

---

[9] However, issuing a written citation alone may not even be a seizure because asking questions does not constitute a *Terry* stop. *See Brown*, 996 F.3d at 1005 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)); *see also Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim."). Based on this rationale, another court in this District held that speaking with police officers and getting a trespass warning notice did not amount to a *Terry* stop. *Doscher v. City of Tumwater*, No. C22-5340, 2022 WL 3867365, at *5 (W.D. Wash. Aug. 30, 2022), *appeal dismissed sub nom. Doscher v. Timberland Reg'l Libr.*, No. 22-35755, 2022 WL 18107586 (9th Cir. Oct. 24, 2022).

1    Mr. Doscher's claim fails because none of his asserted facts establish that Officer

2    Thompson violated Mr. Doscher's constitutional right. Mr. Doscher's claim rests almost entirely

3    on the fact that Officer Thompson informed Ms. Hedges, who started assisting Mr. Doscher

4    while waiting for the police to arrive, that he could not trespass Mr. Doscher while she continued

5    to assist him. Dkt. No. 12 ¶¶ 115–116. Far from supporting Mr. Doscher's claim of the

6    unreasonableness of Officer Thompson's subsequent actions, the Court finds that this allegation

7    supports the fact that Officer Thompson acted reasonably by seeking to first confirm that Fred

8    Meyer still wished to trespass Mr. Doscher for violating the mask policy *before* initiating the

9    alleged "Terry stop." The fact that Ms. Hedges then stopped assisting Mr. Doscher (*id.* ¶ 28) only

10   establishes that Fred Meyer did, in fact, still intend to revoke Mr. Doscher's license to remain on

11   the premises. The Amended Complaint also admits that Officer Thompson then further

12   confirmed Fred Meyer's intentions, by asking Mr. Maygra specifically "you want him

13   trespassed?" to which Mr. Maygra responded "yes." *Id.* ¶ 30. At that point, Officer Thompson

14   had sufficient "reasonable suspicion" to enforce Fred Meyer's request to trespass Mr. Doscher

15   and to briefly detain him to provide him with the notice. *See Terry*, 392 U.S. at 30; *see also*

16   *Harvey*, 1 F.4th at 582. Mr. Doscher's arguments to the contrary are premised entirely on

17   conclusory allegations in the Amended Complaint regarding what Officer Thompson should

18   have concluded, and the Fred Meyer Defendants' alleged malicious motivations, to which the

19   Court need not afford any veracity and can disregard in determining whether Mr. Doscher has

20   stated a claim for relief. *Iqbal*, 556 U.S. at 678.

21   Because Mr. Doscher fails to assert facts to establish that Officer Thompson violated any

22   clearly established right, the Court GRANTS the Tumwater Defendants' motion to dismiss the

23   individual § 1983 claim against Officer Thompson.

24

1

### b.   *Individual Liability for Ms. Hedges and Mr. Maygra*

2      Mr. Doscher fails to plead sufficient facts to support his claim for individual liability

3   against Ms. Hedges or Mr. Maygra under § 1983. Generally, private parties cannot be held liable

4   under § 1983 because they are not acting under color of law. *Simmons v. Sacramento Cnty.*

5   *Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (citing *Price v. Hawaii*, 939 F.2d 702, 708

6   (9th Cir. 1991)). "[P]rivate parties may act under color of state law when the state significantly

7   involves itself in the private parties' actions and decision-making [sic] at issue." *Rawson v.*

8   *Recovery Innovations, Inc.*, 975 F.3d 742, 753 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021).

9
> A private individual's actions can only be considered state action if
10   a sufficiently close nexus makes private action treatable as that of
the government entity itself. Merely authorizing, approving, or
11   acquiescing to private action—such as the creation or modification
of any legal remedy—is not enough to show state action. And an
12   action by a private party pursuant to a statute, without something
more, is not sufficient to justify a characterization of that party as a
'state actor.'

13
*Ballinger v. City of Oakland*, 24 F.4th 1287, 1300 (9th Cir.) (citations, internal quotation marks,
14
and alterations omitted), *cert. denied*, 142 S. Ct. 2777 (2022). Mr. Doscher's claims against
15
Ms. Hedges and Mr. Maygra are premised entirely on the following facts: (1) that they made the
16
decision to call 911 to have the police trespass Mr. Doscher from the store without allegedly ever
17
asking him to leave; (2) Ms. Hedges then began assisting Mr. Doscher while waiting for the
18
police to arrive; and (3) Ms. Hedges stopped assisting Mr. Doscher when Officer Thompson
19
informed her that he could not execute the trespass request if she continued to assist him. As
20
previously discussed, Fred Meyer was within its rights to revoke Mr. Doscher's license to remain
21
on the premises for refusing to comply with the mask policy, and it was not unreasonable for
22
Officer Thompson to seek clarification regarding Fred Meyer's intentions before executing the
23
trespass request that he was dispatched to the store to issue. Even if Officer Thompson's actions
24

1    violated any of Mr. Doscher's Constitutional rights, none of Mr. Doscher's facts establish a

2    sufficiently close nexus between the actions of the private-party Defendants and state action to

3    impose § 1983 liability.

4          Because Mr. Doscher fails to assert facts to establish that Ms. Hedges or Mr. Maygra

5    acted under color of law, the Court GRANTS the Fred Meyer Defendants' motion to dismiss these

6    individual § 1983 claims.

7    **C.     Conspiracy Claims**

8          Mr. Doscher's conspiracy claims fail because he has not asserted any facts from which

9    liability under §§ 1983 or 1985 can be inferred against any of the Defendants.

10         **1.     Section 1983**

11         "Conspiracy is not itself a constitutional tort under § 1983. . . . [but] is usually alleged by

12    plaintiffs to draw in private parties who would otherwise not be susceptible to a § 1983 action

13    because of the state action doctrine." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir.

14    2012). Mr. Doscher's § 1983 conspiracy claim fails because he has not asserted sufficient facts

15    to support any of his substantive § 1983 claims as discussed in Section III.B. *Avalos v. Baca*, 596

16    F.3d 583, 587 (9th Cir. 2010) ("[F]ailure of plaintiff's substantive claims defeats his claims of

17    conspiracy.").

18         **2.     Sections 1985 and 1986**

19         Section 1985 itself provides no substantive rights, but it does provide a cause of action

20    when two or more parties conspire to violate the equal protection rights of another. 42 U.S.C.

21    § 1985; *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).

22    Section 1986 creates a cause of action when a person fails to intervene and stop a § 1985

23    conspiracy. 42 U.S.C. § 1986. Thus, for Mr. Doscher's § 1986 claim to survive, Mr. Doscher

24    must plausibly allege a § 1985 violation.

Mr. Doscher's facts fall short of showing the level of invidiously discriminatory class-based animus required to establish a § 1985 violation. The Supreme Court has held that "[t]he language [in § 1985] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some . . . class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "The term 'invidious discrimination' generally refers to treating a class differently in order to harm or repress it." *Nat'l Comm. of Reform Party of U.S. v. Democratic Nat. Comm.*, 168 F.3d 360, 366 (9th Cir. 1999). Establishing invidious discrimination typically requires showing a "disproportionate [class-based] impact . . . coupled with proof of invidious intent." *De La Cruz v. Tormey*, 582 F.2d 45, 52 (9th Cir. 1978). None of Mr. Doscher asserted facts indicate that Fred Meyer imposed its mask policy with the intent to harm people with breathing disabilities. Fred Meyer plausibly asserts that its policy was intended to comply with the state-wide mask mandate, which in turn was imposed to slow the spread of COVID-19 and to protect the public, especially those at highest risk—such as people with breathing disabilities. There are also no facts from which an inference of animus against people with breathing disabilities can be inferred.[10] At most, Plaintiff's allegations raise the possibility of animus against himself as an individual. This animosity appears to arise more from the disagreement that happened in the store because of the Parties' conflicting interpretations of the various COVID-related

---

[10] Plaintiff alleges that he noticed at least two other individuals enter the store without wearing a mask during his interactions with the named Defendants, and that these people were not confronted by either Mr. Maygra or Officer Thompson. Dkt. No. 12 ¶¶ 42–43. As alleged, Plaintiff noticed these individuals while he was outside the store with Mr. Maygra and Officer Thompson being given the trespass notice. *Id.* The only reasonable inference from Plaintiff's allegation is that neither Mr. Maygra nor Officer Thompson confronted these individuals because they were busy dealing with Plaintiff. There is nothing in the Amended Complaint from which the Court could conclude that Fred Meyer's policy was improperly enforced, as it is entirely plausible that those maskless individuals would have been confronted and informed of the policy by other Fred Meyer employees.

1   communications publish by the different government entities (*see supra* note 5), not from the

2   fact that Plaintiff has a breathing disability.

3   **D.      The Court Lacks Subject Matter Jurisdiction**

4          As discussed above, the Court finds that Mr. Doscher fails to state a claim for any of his

5   federal causes of action. This deprives the Court of further jurisdiction over this matter. Even if

6   no side raises it, the Court has an independent duty to ensure subject matter jurisdiction and must

7   raise the issue *sua sponte* as needed. *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*,

8   360 F.3d 960, 967 (9th Cir. 2004) ("[A] district court ha[s] a duty to establish subject matter

9   jurisdiction . . .whether the parties raised the issue or not."); Fed. R. Civ. P. 12(h)(3) ("If the

10  court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

11  action."). Federal courts are presumed to lack subject matter jurisdiction over a case, and the

12  plaintiff bears the burden of showing otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

13  U.S. 375, 377 (1994). In this case, Mr. Doscher must show that his case, at least in part, "aris[es]

14  under the Constitution, laws, or treaties of the United States" (a.k.a., "federal question"

15  jurisdiction). *See* 28 U.S.C. § 1331.[11] As a federal court, this Court must dismiss a case if it lacks

16  jurisdiction.[12] Fed. R. Civ. P. 12(h).

17                            **IV.    CONCLUSION**

18         Plaintiff fails to state a federal claim upon which relief can be granted. As such, the Court

19  must dismiss Plaintiff's complaint for lack of subject matter jurisdiction. "A district court should

20  not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the

21

22  [11] Because Plaintiff and at least some of the Defendants appear to be residents of Washington state, Plaintiff would be unable to proceed under the alternate diversity jurisdiction statute. *See* 42 U.S.C. § 1332.

23  [12] The Court does not address the remaining state law claims because "[o]rdinarily, a court cannot issue a ruling on the merits 'when it has no jurisdiction' because 'to do so is, by very definition, for a court to act *ultra vires*,'" or

24  outside its powers. *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)).

deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)) (district court erred by failing to explain deficiencies of a *pro se* prisoner civil rights complaint and dismissing without leave to amend). Here, Plaintiff had the opportunity to respond to the deficiencies in his Complaint highlighted by the Defendants in their respective motions to dismiss. Nothing in either of Plaintiff's opposition briefs convinces the Court that any set of facts could cure the deficiencies the Court finds with Plaintiff's federal claims.

Consequently, the Court GRANTS the Defendants' respective motions to dismiss as to all of Plaintiff's federal claims (Dkt. Nos. 26, 28) and DISMISSES this case for lack of subject matter jurisdiction.

Dated this 30th day of March 2023.

Tana Lin
United States District Judge